WRIGHT, J.
to the jury. The words complained of as slanderous are, in substance, that the plaintiff was pregnant of a bastard, and had gone to Kentucky to be delivered of it. The labor bestowed upon the declaration to lay the words in various ways, to meet the proof, was unnecessary, for in this action, it is only necessary 318] *to prove words uttered in the same sense, conveying the same charge, or to prove them substantially as laid.
The defence is presented in two aspects: 1. By the plea of not guilty, which denies the speaking of the words, and requires of the plaintiff proof of their being spoken; and, 2d. By the notice, which admits the words were spoken, but asserts that before they were spoken, the defendant had been told them by S. B. Files, and wh'en he spoke them, he gave Files as his author, and only spoke them as a report from him. These issues you are to pass upon. In the discharge of your duty, you will ascertain the facts from the evidence and apply them to the case according to the law, as given to you by the court.
If the witnesses, who testify to the speaking of the words, are entitled to credit, the words are proven to have been uttered substantially as laid; and if so, the plaintiff is entitled to your verdict on that issue. What credit is due to the witnesses, is a question for you. All witnesses are presumed credible, unless impeached, either by testimony of their bad character, or by evidence contradicting them, by their manner of testifying, or by the improbability of the evidence given.
As to the justification. This aspect of the defence it is imcumbent on the defendant to satisfy you is true, by proof, that at all times, when he spoke the words, he gave his author, and that he spoke only what his author told him. If he fail in this, this justification fails. You will examine the evidence-with this view. Four of the witnesses testify to the same conversation at themillrace gathering. Two of them say, they heard no author given; one thinks, that after the defendant was asked who told him, he replied, it was Files, and a man at Wilmington. You will ascertain the fact. As a general rule, when several testify to the same conversation, what one heard is not contradicted by the negative evidence of another, that he did not hear. All the attending circumstances should be considered, and if the evidence can he reconciled with truth, without supposing any witness to have sworn falsely, it is your duty so to reconcile, it. *325 The law does not unnecessarily raise presumptions of guilt against any one. If the author was not given at each speaking, or a different author given than the. one named in the justification, the defendant is not excused. In that ease, your inquiries will again he directed to the case upon the general issue of not guilty. But if he always gave Files as the author, and Files did tell him before he spoke the words, the defendant is excused, and entitled to your verdict. You will remember on this point the testimony of *the other witnesses, to the conversations at different times [319 and places.
Under the general issue, it is urged for the defence, that this story was a common report. This branch of the defence, gentlemen, rests on the supposition that the plaintiff had been generally accused of the matters the defendant charged upon her, of which she had knowledge, and neglected to cause an investigation, until the story had gained general belief, in some measure owing to her acquiescence. In such eases, though false, the law, in accordance with common sense, regards the circumstance in mitigation of damages. It looks to the infirmities of our nature, and holds those less culpable who only circulate a common report, which is believed, or speak of one only as rumor, than those who originate slander. This is no justification, and will only avail to reduce the question of damage. To be of avail even in that way, it must be a general report, and have gained at least partial belief with the defendant. If one circulate slander, which another originates, he gives it currency, and throws in the weight of his own character to gain credit for it. It is not presumable that he innocently gave currency to imputations he did not believe. If otherwise, the slanderer would find it a convenient method to carry out a malicious design to destroy another’s reputation, by taking up reports of malignant persons, without character or pecuniary responsibility, imputing credit to them by his endorsement, and then screen himself from liability upon the ground of reports. If then, you shall find that the words are not justified, but that they were spoken only as a common report, which the defendant believed, and the ¡plaintiff’s knowledge and acquiescence had aided to give currency to it, the damages should be mitigated and reduced to such sum as will compensate the plaintiff for the trouble and expense of clearing up the charge. Such damages look only to the amount of actual loss. They never vary on account of the circumstances of the parties; they neither contract nor expand, out of regard to the ability of the party to pay or to receive. As in cases of contracts, juries give the amount of the actual damage, in *326 favor of the rich man, and against the poor, though ten times the extent of the defendant’s means, and involve him in hopeless ruin; so in this case, if it be one for compensatory damages. If the case, in your opinion, is one for such damages, you -will ascertain, as well as you can, the costs and expense the plaintiff has been put to, in order to make manifest her innocence, and return a verdict for her for the amount.
320] *The attempt to justify, in slander, if it fails, is held to aggravate the damages. It shows the disposition to injure to exist even at the trial, and an effort to give new and continuing life to the defamatory charge, by spreading it on the records as true. Therefore, such attempt and failure generally entitles a plaintiff to exemplary damages, which not only look to compensate and vindicate the plaintiff, and to testisy to the world the estimation in which the jury hold a good character, but are intended to punish the defendant, and to operate as an example to deter others from committing the like offence. In this class of cases, the jury may look to the ability of the defendant, and the character of the parties, for the obvious reason that a less sum, looking to these ends, would effect the object with one of limited means, than would be felt by one of more enlarged means.
I am asked by the counsel for the defendant, to give it in charge, that malice is an ingredient in this action to be proven by the plaintiff, and that there is no evidence in this case on that head. Malice is an evil disposition, and is evinced by an intention to do harm. In this action, if the words are proven, and are not justified, the law presumes them malicious, and casts upon the defendant the burthen of proving the circumstances relied upon, to show that some other than a malicious motive induced the accusation. Words spoken in the administration of justice, as by a party, or lawyer in advocating a cause, or in confidence, in giving the character of a servant upon inquiry, or in real concern for a supposed dereliction of duty, are held not slanderous, because stripped of malice; but the defendant must show such to be his case. The absence of proof on the subject of malice, leaves the case in that respect with the plaintiff.
If you are satisfied the defendant has uttered the slanderous charge alleged in the declaration, and that the attempt to justify has failed, and the defendant has not shown you any mitigating circumstances, what damages ought you give? This is a question with you. The defendant admits before you, that the plaintiff’s character is excellent, unimpeached, and unimpeachable. Why did he defame her? You will seek for the answer in the evidence, remembering that *327 it is the defendant’s duty to explain his motives. Reports believed' false, tend to aggravate, rather than mitigate. The plaintiff is a female. The nature of the charge is calculated to destroy her •character, cut her off from virtuous society, prevent her from forming that connection in life in which are centered all her hopes and-affections, and consign her to dependence, unhappiness and misery, ■*or competency from infamous prostitution. Such a charge, in [321 its extent and influence upon character, or in its consequences, is vastly more injurious to a female than to our sex. When believed, it places a female beyond the pale of society. Seldom seen, they •can neither fly from, nor outlive the disgrace, but must pine and wither, and live under it, a loathed and filthy weed, whose touch is contamination. If such a case is made, a jury will seldom err in giving too much damage. The verdict should look to a fair estimate of character, to its perfect vindication, to the punishment of the defendant, and to the deterring others from wantonly assailing female reputation.
You will examine your evidence, and apply it to the issues, and find such a verdict under all the circumstances, as you think right.
Verdict and judgment for the plaintiff for three hundred and one ■dollars, and costs.
[Counsel fees as part of damages, followed and approved; Roberts v. Mason, 10 O. S. 277, 282; Finney v. Smith, 31 O. S. 529, 533, 534. Justification not sustained is an aggravation denied; Rayner v. Kinney, 14 O. S. 283, 285. Slander of female, what is; Alfele v. Wright, 17 O. S. 238, 242; Murray v. Murray, 1 C. S. S. R. 290, 291; Westlake v. Westlake, 34 O. S. 621, 631. Wealth of defendant considered in estimating damages; Hayner v. Cowden, 27 O. S. 292, 297.]